**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**MALIK RODNEY WILLIAMS,**<br><br>**Defendant.** | **Case No. 24-CR-162-3 (RBW)** |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION**

On April 17, 2024, Defendant Malik Williams was ordered detained pending trial for the alleged possession of an unlawful firearm which was found under his mattress. The firearm was stolen from the victim of a kidnapping and robbery (Y.A.). At the time he was ordered detained, Malik Williams was not charged in that kidnapping and robbery. The Government did not yet have sufficient evidence connecting him to the kidnapping. Indeed, the Government did not even have forensic evidence connecting him to the recovered firearm. Malik Williams has now been indicted for his role in that kidnapping and robbery. The Government has developed cell site location evidence placing Malik Williams at the location of the kidnapping, along the route to the victim's apartment which was burglarized, and at an apartment belonging to his brother where the proceeds of the robbery were divided. Additionally, the Government has recovered videos that appear to be recorded on Malik William's own phone showing Malik Williams holding a firearm next to the bound victim in the suspect vehicle and dividing the proceeds of the robbery. And the Government has also obtained the results of DNA analysis, conclusively connecting Malik Williams to the firearm, which was stolen from the victim.

Malik Williams has already been ordered detained on far less compelling evidence and less serious charges. In light of the presumption applicable to these offenses, and considering the

factors specified under 18 U.S.C. § 3142(g), there are no conditions or combination of conditions short of detention that can ensure the safety of our community. For the following reasons, Malik Williams should be detained pending trial.

**FACTUAL BACKGROUND**

On February 25, 2024, Defendant Timothy Williams, co-defendant and brother to Defendant Malik Williams, arranged to purchase marijuana from Y.A., a drug dealer and sneaker collector. The arrangement was a ruse designed to allow Defendants Timothy Williams, Malik Williams, and Jaevonn Archer to rob Y.A. When Timothy Williams met Y.A. to purchase drugs, the defendants rushed Y.A. and kidnapped him. They bound and blindfolded Y.A., placed him in a vehicle, stole his vehicle, drove to Y.A.'s apartment in Virginia, burglarized that apartment, and then deposited Y.A. in Maryland, zip-tied and blindfolded in his car. Y.A. spent approximately six hours bound and blindfolded through the course of these offenses. During that time, the defendants stole multiple firearms, over $100,000, hundreds of pairs of shoes, jewelry and a significant quantity of marijuana.[1]

[1] Since initially reporting the kidnapping, Y.A. has subsequently admitted to providing false statements to police. *First*, Y.A. had initially claimed he did not know who his kidnappers were. In fact, Y.A. knew TIMOTHY WILLIAMS by the nickname "Flex" and had sold him large quantities of marijuana on a regular basis. *Second*, Y.A. had initially claimed that he and TIMOTHY WILLIAMS met to purchase sneakers on the evening of February 25, 2024. Instead, Y.A. was showing TIMOTHY WILLIAMS a few "sample" bags of marijuana. *Third*, law enforcement had noted that many of the Instagram messages between Y.A. and TIMOTHY WILLIAMS had been deleted. Y.A. admitted that he deleted these messages because he did not want law enforcement to know that he was dealing marijuana, although Y.A. remained consistent that the kidnappers took his phone and deleted some items from it, including credit cards. *Fourth*, Y.A. admitted that he was using the Columbia Residences apartment as a stash house for his marijuana, and that he got the apartment to deal marijuana from it, not to live in it.

***Y.A. is Kidnapped in the District of Columbia***

On February 25, 2024, at 1:04 AM, as reflected on surveillance video, Y.A.'s white Mercedes entered the parking garage of the Columbia Residences, in Washington, D.C., where Y.A. maintained a stash house. His vehicle was followed by Timothy Williams who was driving a stolen Black Dodge Charger. Unbeknownst to Y.A., inside the Charger, Malik Williams and Jaevonn Archer were waiting to rob Y.A. Surveillance video reflects that Timothy Williams took the elevator from the garage and spent approximately twenty minutes in Y.A.'s apartment before returning to the garage around 1:33 AM. After that, they moved to a part of the garage that does not have surveillance video.

According to Y.A., that was when Timothy Williams grabbed him in a bear hug, and at least two other men charged at him holding firearms. Y.A. specifically recalled that at least one of the firearms was a Draco-style AK-pistol firearm. The defendants bound Y.A. with zip ties and covered his eyes before forcing him into the back seat of the Dodge Charger. Y.A. was positioned with his head near the driver's side of the car while one of the subjects sat on his legs. At some point, the defendants took Y.A.'s cell phone, wallet, and keys to his apartment and his Mercedes.

Cell site location data for Malik Williams' cellphone number places him at the location of the kidnapping.[2] Additionally, videos from Malik William's phone indicate that it was Williams who was sitting with or on the bound Y.A. during the kidnapping. Specifically, a video on Malik Williams' phone which will be introduced as **Government Exhibit 1**, reflects a first-person view of a Draco-style firearm pointed at the buttocks of an individual who is wearing shorts and appears

[2] Malik Williams provided this telephone number (202-977-6091) to law enforcement on multiple previous interactions. Additionally, this number communicated with both Timothy Williams and Jeavon Archer before and after the kidnapping. Further, this is the number associated with the device seized from Malik Williams' bedroom, which Malik Williams identified as his device.

to have pants pulled around his ankles. What appear to be zip ties, which were consistent with the appearance of those binding the Y.A.'s hands and feet when he was located by police later that morning, can be seen near the person's hands and feet. The Draco-style firearm is consistent with a firearm that Y.A. reported was used in this offense.

***Y.A.'s VA Residence is Burglarized***

Y.A. reported to law enforcement that he was ultimately driven away from the scene where he was kidnapped. Y.A. was able to lift his head and glance through his blindfold and saw single family homes that were not present where Y.A. was initially kidnapped. Around the time Y.A. was able to lift his head, the subjects shoved Y.A.'s head back down toward the seat and continued to do so whenever Y.A. attempted to lift his head again.

The defendants demanded to know where Y.A. lived and threatened to go to the address on his driver's license if he did not provide another. They struck him repeatedly with a gun while demanding the address. In fear that the subjects would go to the address on Y.A.'s license, where his grandmother and other family members lived, he provided the address for his apartment building in Virginia.

Prior to departing D.C., and after Y.A. was bound in the back of the black Dodge Charger, the defendants stopped at a Citgo at 2300 Pennsylvania Avenue, Northeast, in Washington D.C. at around 3:01 AM. Both surveillance footage and cell site evidence associated with Timothy Williams' and Jaevonn Archer's phone numbers place them at the Citgo, filling up gas for both the black Dodge Charger and a white truck registered to Timothy Williams. Once the Defendants finished filling up gas, surveillance footage shows both Vehicles departing from the Citgo, and cell site evidence from approximately 3:07 AM to 3:33 AM shows both Timothy Williams' and Jaevonn Archer's phones traveling from the Citgo towards Y.A.'s Virginia residence.

While blindfolded, Y.A. recalled believing the defendants had driven him to his Virginia residence based on discussions he overheard about the defendants parking. Once parked, the defendants demanded Y.A.'s apartment number and continued to hit him with a gun. Y.A. ultimately provided his apartment number. Y.A. could then hear the defendants coming and going from the vehicle placing items in the trunk. The defendants then demanded the code for his safe located in his apartment, which he attempted to stall providing. They continued to strike him with the gun until he provided the safe code. From the safe, the subjects stole multiple firearms and over $100,000 in cash. Among the items stolen from the apartment were at least two pistols, at least five long guns, between 200 and 300 pairs of shoes, virtually all of Y.A.'s clothing, "Bearbricks"[3], and multiple pieces of Y.A.'s jewelry. Y.A. overheard the subjects say they "got a ticket," which he understood to mean they had "hit the jackpot" in his apartment.

Surveillance video corroborates Y.A.'s recollection of events. Video from a nearby residence reflects the black Dodge Charger and a white truck registered to Timothy Williams at Y.A.'s Virginia residence at approximately 3:43 AM. Surveillance video then reflects Timothy Williams and Jaevonn Archer entering the residence. Timothy Williams is carrying what appears to be a collapsible storage bin. Timothy Williams and Jaevonn Archer proceed to make multiple trips between the vehicles and Y.A.'s apartment carrying a significant number of items.

---

[3] Bearbrick is a brand of collectible designer bear figurines that come in multiple sizes. Bearbrick often collaborates with well-known artists and are released in limited quantities from the manufacturer. Due to its limited releases, there is an active resale market for Bearbricks, with some Bearbricks being resold at $10,000.00 - $20,000.00.



**Figure 1: Timothy Williams carrying property out to vehicles at approximately 4:49 AM.**




**Figure 2: Timothy Williams with a full dolly of property at approximately 5:01 AM**.




**Figure 3: Timothy Williams with a full dolly of property at approximately 5:16 AM.**



**Figure 4: Timothy Williams with a full dolly of property at approximately 5:42 AM.**



**Figure 5: Timothy Williams leaving with a full dolly of property at approximately 5:57 AM.**

While Timothy Williams and Jaevonn Archer were burglarizing Y.A.'s apartment, Y.A. recalled that one or two suspects remained guarding him. There is no cell site location data for Malik William's phone during the burglary of Y.A.'s Virginia residence. Specifically, his device did not transmit location data from 3:25 AM. until 7:41 AM. At 3:24 AM, however, Malik William's device pinged off a tower located on the route one would use to travel towards Y.A's Virginia residence, consistent with the time when the kidnappers would have been passing through that area on their way to burglarize the residence.

***Proceeds of the Kidnapping are Divided and Stashed in the Trove Apartments***

After leaving Y.A.'s Virginia residence, Y.A. recalled that he was driven for at least thirty more minutes before stopping at an unknown location to unload the items they had stolen from his apartment. During this time, Y.A. overheard the subjects discussing what to do with him. Cell site location data place Timothy Williams, Jeavonn Archer, and Malik Williams at the Trove Apartments in Arlington, Virginia, where Timothy Williams reportedly resided. This is corroborated by surveillance footage showing the black Dodge Charger and a white van belonging

to Timothy Williams driving through the rear alley of the apartment building, which contains a direct walking path to Timothy Williams' apartment there.

Based on videos from Malik Williams' own phone, along with Malik Williams and the other defendants' cell site location data, the defendants divvied up the proceeds of the robbery at the Trove apartments. Specifically, at the June 21, 2024 detention hearing, the Government will play the following videos recovered from Malik Williams' phone:

- **Government Exhibit 2:** a video reflecting multiple firearms consistent in appearance with those stolen from Y.A. displayed in a room that, based on law enforcement's subsequent residential search, appears to be in the unit of Trove Apartments belonging to Timothy Williams; and
- **Government Exhibit 3:** a video reflecting a significant quantity of marijuana packaged in a manner consistent with that stolen from Y.A. displayed in a room that, based on law enforcement's subsequent residential search, appears to be in the unit of Trove Apartments belonging to Timothy Williams.

***Y.A. is Left in Victim Vehicle, Still Bound, in Maryland***

Y.A. was ultimately driven by the subjects to District Heights, Maryland, where he was forced back into his own Mercedes while still bound. For the approximate six hours from when he was kidnapped in Washington D.C., to the time he was dropped off in Maryland, he did not leave the back seat of the black Charger.

Prince George's County Police (PGPD) officers responded to a distress call at in District Heights, Maryland, at approximately 7:15 AM on February 25, 2024. At approximately 7:30 AM, PGPD found Y.A. blindfolded and bound with zip ties inside Y.A.'s Mercedes. PGPD body worn camera (BWC) footage, shows Y.A. sitting in Y.A.'s vehicle while PGPD frees him from the zip

ties before cutting away the duct tape around his eyes and head. The BWC footage also shows a witness on scene who was attempting to assist Y.A. Law enforcement subsequently identified and interviewed this witness, who stated that on the morning of February 25, 2024, they were standing outside of their apartment when they saw a white Mercedes or BMW pull into the block and park. A person got out of the white vehicle and into another vehicle. From the second vehicle, the witnesses observed unknown individuals dragging what appeared to be a lifeless person and place him in the white vehicle. The unknown individuals then returned to the second vehicle and left the area. The witness approached the white vehicle and found Y.A. bound with his eyes covered. The witness urged Y.A. to unlock the door, which he ultimately opened from the inside, and the witness was able to call 911 from Y.A.'s phone.

***<u>The Search of Malik Williams' Residence</u>***

On April 9, 2024, shortly after 6 AM, five residences and two vehicles were searched or seized pursuant to warrants obtained in multiple jurisdictions. Proceeds of the kidnapping and robbery were recovered from almost all of the targeted locations, including the residence in which Malik Williams was found and arrested, and is believed to reside (1912 Q Street SE).

In Malik Williams' residence, dozens of boxes of shoes were seized in every single room. The shoes were consistent with those reported stolen from Y.A. In Malik Williams' bedroom, law enforcement recovered the following:

(1) an FNH Pistol located under the Defendant's mattress, loaded with one round of 5.7 x 28 caliber ammunition in the chamber and additional rounds of the same ammunition in the magazine;

(2) an additional magazine for the FNH Pistol containing rounds of 5.7 x 28 of ammunition;

(3) one camouflaged duffel bag containing approximately eight pounds of marijuana, and four additional bags containing marijuana (for a total of approximately 11.23 pounds of marijuana);

(4) $8,000.00 in United States currency bundled into $1,000.00 stacks; and

(5) Malik Williams' identification card (located on the bed with him).

The FNH pistol was identified as having been stolen from Y.A. during the kidnapping and was found in between the mattress and box spring that Malik Williams was on at the time of the search. In a separate bedroom occupied by a relative of Malik Williams, law enforcement recovered a PlayStation 5 gaming console, consistent with that stolen from Y.A.

In addition to Malik Williams' physical proximity to the FNH pistol stolen from Y.A., a video on Malik Williams' phone, which will be introduced as **Government Exhibit 4**, depicts the same pistol. Location information associated with the video reflects that it was recorded near 1912 Q Street SE.

Further, following his arrest, law enforcement obtained a buccal swab from Y.A. and developed DNA profiles from that swab as well as swabs of the FNH pistol and magazine. The DNA profile developed from the pistol magazine was determined to be a mixture of four individuals and such a profile is 1.8 octillion times more likely if Malik Williams and three unknown, unrelated people are contributors than if four unknown, unrelated people are contributors. The DNA profile developed from the pistol was determined to be a mixture of four individuals and such a profile is 1.5 nonillion times more likely if Malik Williams and three unknown, unrelated people are contributors than if four unknown, unrelated people are contributors. According to the FBI's Quantico laboratory, both of these results are "Very Strong Support" for the inclusion of Malik Williams as a contributor.

***Malik Williams Statements Following Arrest***

Following their arrests, Defendants Jaevonn Archer and Malik Williams were placed in the same holding cell at the FBI's Washington Field Office. Malik Williams initially indicated his awareness that the holding cell was recorded, stating: "We ain't gon' talk in here, bro." Despite that, Malik Williams did talk. In response to learning that Archer was charged with kidnapping and conspiracy to commit kidnapping, Malik Williams said: "That's it So you only got two charges?" In discussing the search of his residence, Malik Williams expressed the belief that law enforcement did not seize his money because he was only being charged with a gun. With respect to the marijuana seized from his room, which was stolen from Y.A., Malik Williams noted that he had "like six, seven, eight pounds left . . . I had like eight pounds." Malik Williams also expressed his view that an unknown individual had been "snitching" on them.

***Procedural History***

On April 3, 2024, Timothy Williams and Jaevonn Archer were indicted on charges of Conspiracy to Commit Kidnapping, in violation of 18 U.S.C. § 1201(c), and Kidnapping, in violation of 18 U.S.C. § 1201(a)(1). On April 9, 2024, Malik Williams was charged by complaint in a separate case (24-cr-197) for Unlawful Possession of a Firearm by an Individual Convicted of an Offense Punishable by Greater Than One Year Imprisonment, in violation of 18 U.S.C. § 922(g)(1). Following a hearing held on April 17, 2024, Malik Williams was detained pending trial. On May 22, 2024, a superseding indictment was returned, joining Malik Williams in those charges, as well as adding counts for Carjacking, in violation of 18 U.S.C. § 2119, and Brandishing a Firearm during a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). As a result of

the superseding indictment, the Government moved to dismiss the stand-alone case against Malik Williams on May 24, 2024.[4]

**ARGUMENT**

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e). The Act provides, however, for certain crimes, like those charged here that there is a rebuttable presumption that no conditions or combinations of conditions will assure the safety of the community. *See id.* The crimes triggering such rebuttable presumptions need not be expressly included in the charging instrument. *See United States v. Bess*, 678 F. Supp. 929, 934 (D.D.C. 1988) (holding that "the complaint need not allege a violation of one of the particular predicate offenses for the presumption to come into play.") Instead, "[if] the facts establish probable cause that the defendant has [committed such an offense], the judicial officer should give proper weight to Congress's general factual view that the defendant poses an unreasonable risk of danger to the community when applying the § 3142(g) factors." *Id.*

In determining whether any condition or combinations of conditions will assure the safety of the community, in light of any applicable presumptions, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the

[4] Following the May 22, 2024 superseding indictment, no hearing was held until June 20, 2024. At that hearing, the Government moved for Malik Williams' detention pending trial.

defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g).

In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986). *See also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues. *See Smith*, 79 F.3d at 1210, *see Williams*, 798 F. Supp. at 36.

One such presumption applies here. Specifically, there is probable cause to believe that Malik Williams violated 18 U.S.C. § 924(c) (brandishing a firearm during a crime of violence). A review of the 3142(g) factors only confirms the presumption that Malik Williams should be detained pending trial.

## I. <u>The Nature and Circumstances of these Offenses Merit Detention.</u>

The nature and circumstances of these offenses weighs heavily in favor of detention.

As an initial matter, Malik Williams faces significant penalties for his role in these offenses. With respect to the kidnapping, Malik Williams faces a potential life sentence. For brandishing a firearm during a crime of violence, Malik Williams faces a mandatory minimum sentence of seven years, but up to life imprisonment. The significant penalties Malik Williams is

facing reflects the serious and deadly nature of armed kidnappings, particularly this armed kidnapping.

Malik Williams and his co-defendants orchestrated and executed a kidnapping spanning three federal jurisdictions that lasted over six hours. They were prepared: they arrived with zip ties and duct tape to restrain the victim, a latex glove to hide forensic evidence, and a dolly, a collapsible storage unit, and a white van, all of which were intended to carry Y.A.'s property away. This offense necessarily required planning and forethought. Put differently, Malik Williams thought long and hard about threatening another person with a gun, confining him in a car, beating him with a gun, and then robbing him of his possessions. Malik Williams did not act in the heat of passion. This was no momentary lapse of judgment. His conduct reflects a cold indifference to human life that strongly weighs in favor of detention.

Further, the kidnapping itself was performed in a notably violent manner. Y.A. sat in a car bound and duct-taped: in other words, helpless. In that state, these defendants beat him repeatedly with a firearm to coerce him into providing them with the means to enrich themselves. One kidnapper even sat on Y.A. during the multi-hour ordeal. Aside from the physical violence inflicted on Y.A., he suffered significant emotional and mental trauma. Blindfolded and bound in those vehicles for hours, Y.A. undoubtedly believed his captors would culminate their offense by murdering him. He sat blind in that car, awaiting his death, until his release hours later. Malik Williams chose to inflict that harm on Y.A. for mere pecuniary gain.

The nature and circumstances of these offenses weighs heavily in favor of detention.

## II. <u>The Weight of the Evidence Against Malik Williams is Formidable.</u>

The second factor to be considered, the weight of the evidence, also weighs in favor of

detention.[5] The Government's case against Malik Williams is very strong.

Malik Williams recorded himself and his co-defendants committing these offenses. His phone, recovered from his bedroom, containing multiple images and information identifying the phone as his, contains multiple videos and images of this offense. Malik Williams recorded himself holding an AK-style pistol pointed at a bound and blindfolded Y.A. while sitting in the car. He recorded him and his co-defendants dividing up the guns and drugs they stole. He even took a video of the firearm he stole from Y.A. which was later recovered under his mattress.

These videos are compelling. But they are further corroborated by cell site location data placing Malik Williams at the location of the kidnapping, at a location consistent with travel to Y.A.'s Virginia residence, and at the Trove Apartments where the proceeds of the robbery were divided.

Additionally, the items seized from Malik Williams' home and bedroom further strengthen the Government's case. He was found in possession of Y.A.'s pistol and his DNA is on that pistol. More than eleven pounds of Y.A.'s marijuana—packaged in a manner recognizable from surveillance video of the robbery—was recovered from Malik Williams' bedroom. And this significant quantity of marijuana did not just happen to be stored in Malik William's bedroom, he made statements acknowledging that he was aware of, even claiming ownership of it.

[5] While some judges in this Court have indicated that this factor should be given less weight, in *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, then Chief Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 WL 1778194, at *8. Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* at *10. In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). The Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

Additionally, boxes of what appear to be Y.A.'s shoes were recovered in Malik Williams' home.

In light of the strength of the Government's case against Malik Williams, this factor weighs heavily in favor of detention.

## III. <u>**The Defendants' History and Characteristics Merit Detention.**</u>

The third factor, Malik Williams' history and characteristics, likewise weighs in favor of detention. Malik Williams has been arrested ten times and convicted of three serious felonies.

On June 22, 2018, the Defendant was convicted of Robbery (Offenses Committed During Release); Attempt to Commit Robbery (Offenses Committed During Release); and First-Degree Theft in D.C. Superior Court case number 2015 CF2 003203. The defendant was sentenced to fifty-four months of incarceration, followed by three years of supervised release. As evidenced from the charges against him, each of those offenses was committed while he was already on supervised release. In those cases, as Malik Williams admitted during his plea colloquy, on February 27, 2015, he and a group of co-conspirators approached an individual and took his Mitsubishi sedan with force and violence. The next day, Williams admitted he grabbed a victim's cell phone while she was using it before running away. Finally, Malik Williams admitted that on March 1, 2015, he and his co-conspirators stole an unoccupied Acura vehicle and drove it away. Notably, Malik Williams was on GPS monitoring at the time of these offenses.

These prior offenses are instructive. *First*, they indicates that Malik Williams use of force and violence to harm and rob someone is not aberrational. His alarming conduct with respect to Y.A. is consistent with his prior conduct with respect to others. *Second*, his criminal history demonstrates that he is not amenable to pretrial supervision. GPS monitoring—a particularly invasive form of monitoring—did nothing to deter Malik Williams from committing a string of robberies with a group of co-conspirators.

Malik Williams' history and characteristics weighs in favor of detention.

**IV. Both Defendants Present a Danger to Our Community.**

The fourth and final factor, danger to any person or the community posed by Malik Williams's release, similarly weighs in favor of detention.

Malik Williams engaged in a singularly violent crime. It was a crime that undoubtedly took hours to plan and it was a crime that took hours to perpetrate. It takes a strong commitment to violence to carry out such a crimes and Malik Williams is committed. In committing this offense, Malik Williams has demonstrated a chilling willingness to engage in violence all for mere pecuniary gain. Perhaps most concerning is the fact that Malik Williams filmed portions of this offense. Malik Williams was so unafraid of consequences and so brazen that he filmed himself holding a bound and blindfolded Y.A. at gun point.

And while this offense is an escalation from his prior offenses, it also represents a continuation of sorts. Malik Williams has repeatedly conspired to visit harm upon others. Court-ordered supervision and a lengthy period of incarceration have done nothing to deter his conduct.

Further, Malik Williams' statements—recorded in a holding cell at FBI's Washington Field Office—reflect a complete lack of concern for the significant consequences of his actions. Moreover, his comments regarding someone potentially "snitching," are frightening and suggest a willingness to engage in witness intimidation or violence.

**CONCLUSION**

For all the foregoing reasons, the Government respectfully requests that the Court detain Malik Williams pending trial on these charges.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

D.C. Bar No. 481052

*/s/ Cameron A. Tepfer*
Cameron A. Tepfer
D.C. Bar No. 1660476
Justin F. Song
N.Y. Attorney No. 5626379
Assistant United States Attorneys
601 D Street NW
Washington, D.C. 20530
(202) 227-9019
Justin.Song@usdoj.gov